## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

|  |  |  |
|---|---|---|
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| APPLETON PAPERS INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF AND CIVIL PENALTIES
## UNDER THE CLEAN AIR ACT

The United States of America, by authority of the Attorney General of the United States

and through the undersigned attorneys, acting at the request of the Administrator of the U.S.

Environmental Protection Agency ("EPA"), files this complaint and alleges as follows:

### STATEMENT OF THE CASE

1.      This is a civil action brought pursuant to the Clean Air Act, ("CAA" or "Act"), 42

U.S.C. §§ 7401-7671q, against Defendant, Appleton Papers Inc. ("Appleton" or "Defendant"),

for civil penalties and injunctive relief for violations of the industrial refrigerant repair, testing,

record-keeping, and reporting regulations at 40 C.F.R. Part 82, Subpart F (Recycling and

Emission Reduction), promulgated pursuant to Title VI of the CAA (Stratospheric Ozone

1

Protection), 42 U.S.C. §§ 7671-7671q, at its Facilities located in West Carrollton, Ohio, and Roaring Spring, Pennsylvania (collectively, "Appleton's Facilities"). This action is also being brought against Appleton for civil penalties and injunctive relief based on violations at its Facility in West Carrollton, Ohio, of the Ohio Administrative Code ("OCA") 3745-17-07 as incorporated into the federally enforceable Ohio State Implementation Plan, and provisions of the federally enforceable Title V permit issued to Appleton Papers Inc. (Facility ID: 08-57-19-0001) pursuant to Title V of the Act, 42 U.S.C. §§ 7661-7661f.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and pursuant to 28 U.S.C. §§ 1331, 1345 and 1355.

3.      Venue is proper in the Eastern District of Wisconsin, pursuant to Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and 1395(a), because, although the violations alleged in this Complaint have occurred at Appleton's Facilities in Ohio and Pennsylvania, Appleton's principal place of business is located in this judicial district.

## NOTICE AND AUTHORITY

4.      The United States Department of Justice has authority to bring this action on behalf of the Administrator of the U.S. Environmental Protection Agency pursuant to 28 U.S.C. §§ 516 and 519, and Section 305(a) of the CAA, 42 U.S.C. § 7605(a).

5.      Notice of the commencement of this action has been given to the appropriate air pollution control agencies for Ohio and Pennsylvania where Appleton's Facilities are located. 42 U.S.C. § 7413(b).

2

## DEFENDANT

6.     Appleton is a corporation incorporated under the laws of the State of Delaware, with its principal place of business located at 825 E. Wisconsin Avenue, Appleton, Wisconsin 54911.

7.     At times relevant to this action, Appleton owned and operated facilities located at 1030 West Alex-Bell Road, West Carrollton, Ohio and 100 Paper Mill Road, Roaring Springs, Pennsylvania. Appleton manufactures coated papers at its Facilities.

8.     Defendant is a "person," as that term is defined at Section 302(e) of the CAA, 42 U.S.C. § 7602(e), and within the meaning ascribed under Section 113 of the CAA, 42 U.S.C. § 7413.

## STATUTORY AND REGULATORY PROVISIONS

9.     The Act's purpose is to protect and to enhance the quality of the nation's air resources so as to promote the public's health and welfare, and the productivity of the population. 42 U.S.C. § 7401(b).

### A.     Stratospheric Ozone Protection

10.     Title VI of the CAA, 42 U.S.C. §§ 7671-7671q (Stratospheric Ozone Protection), implements the Montreal Protocol on Substances that Deplete the Ozone Layer, and mandates the elimination or control of emissions of substances which are known or suspected to cause or significantly contribute to harmful effects on the stratospheric ozone layer, referred to as class I and class II substances.

11.     Section 608 of Title VI of the CAA, 42 U.S.C. § 7671g (National Recycling and Emission Reduction Program), requires that EPA promulgate regulations establishing standards

3

and requirements regarding the use and disposal of class I and class II ozone-depleting substances during the service, repair, or disposal of Comfort Cooling Appliances ("CCAs"), Commercial Refrigeration Appliances ("CRAs"), and Industrial Process Refrigeration Appliances ("IPR Appliances").

12.     EPA promulgated the regulations required by Section 608, codified at 40 C.F.R. Part 82, Subpart F (Recycling and Emissions Reduction). 58 Fed. Reg. 28712 (May 14, 1993) (40 C.F.R. §§ 82.150-82.169 (hereinafter "Subpart F regulations")).

13.     Section 608 of the CAA states "it shall be unlawful for any person, in the course of maintaining, servicing, repairing, or disposing of an appliance or industrial process refrigeration, to knowingly vent or otherwise knowingly release or dispose of any class I or class II substance used as a refrigerant in such appliance (or industrial process refrigeration) in a manner which permits such substance to enter the environment." 42 U.S.C. § 7671g(c)(1). The Subpart F Regulations reiterate this prohibition, effective June 14, 1993. 40 C.F.R. § 82.154(a).

14.     The Subpart F Regulations also impose leak repair and record-keeping requirements for all types of Appliances containing more than 50 pounds of Refrigerant, including IPR Appliances. These regulations are aimed at reducing emissions of class I and class II ozone-depleting substances to the atmosphere. 40 C.F.R. § 82.156(i).

15.     Pursuant to 40 C.F.R. § 82.156(i)(2), a person owning or operating a facility with IPR Appliances must keep the leak rate of its equipment at or below a 35% annualized leak rate. Where the annualized leak rate from an IPR Appliance exceeds 35%, the owner or operator must repair the leaks to bring the leak rate down to below 35% within thirty days (120 days if an industrial process shutdown, as defined by the Subpart F Regulations, is needed to repair the

4

Appliance, and additional time if the facility cannot get a necessary part). 40 C.F.R. §
82.156(i)(2).

16.     Pursuant to 40 C.F.R. § 82.156(i)(3), upon conclusion of repairs to a leaking
IPRA, the owner or operator must perform an initial verification test demonstrating that the leaks
have been repaired. A follow-up verification leak test must be performed within 30 days
following the initial verification test. 40 C.F.R. § 82.156(i)(3).

17.     Pursuant to 40 C.F.R. § 82.156(i)(3)(iii), if leak repair of an IPRA is attempted
but the follow-up verification test reveals that the leak rate is more than 35%, the owner or
operator must notify the EPA within 30 days, in accordance with 40 C.F.R. § 82.166(n).

18.     If leak repairs of an IPR Appliance have not been successfully completed within
30 days of discovering leaks that exceed the applicable allowable leak rate, or within 30 days of a
failed follow-up verification test, the owner or operator must develop a one-year plan to retrofit
or retire the leaking Appliance. The owner or operator then must retrofit or retire the Appliance
in accordance with the plan, within one year from the date of the plan.   40 C.F.R. § 82.156(i)(6).

19.     Pursuant to 40 C.F.R. § 82.166(k), the owner or operator of IPR Appliances
containing 50 pounds or more of Refrigerant must maintain records detailing the date and type of
service, as well as the amount of Refrigerant added to the equipment.

20.     All records required to be maintained pursuant to 40 C.F.R. § 82.166 must be kept
for a minimum of three years.   40 C.F.R. § 82.166(m).

21.     For all reports to EPA required to be made pursuant to 40 C.F.R. § 82.166(n), the
owner or operator of IPRAs must report, *inter alia*, the leak rate of any Appliance, the method
used to determine the leak rate, the date a leak rate above the allowable leak rate was discovered,

5

the location and extent of leaks, and the date and type of repair work that has been completed.
40 C.F.R. § 82.166(n).

**B.    National Ambient Air Quality Standards: State Implementation Plan**

22.    Section 109(a) of the Act, 42 U.S.C. § 7409(a), requires the EPA to publish national ambient air quality standards ("NAAQS") for criteria pollutants. The NAAQS establish primary and secondary air quality standards to protect public health and welfare. 42 U.S.C. § 7409(b).

23.    The EPA promulgated NAAQS for certain criteria air pollutants, including, *inter alia*, particulate matter ("PM"). 40 C.F.R. §§ 50.6, 50.7 and 50.13.

24.    To achieve the objectives of the NAAQS and the CAA, Section 110(a) of the Act, 42 U.S.C. § 7410(a), requires each state to submit a plan to the EPA that provides for the implementation, maintenance and enforcement of the NAAQS in each air quality control region. Upon approval by the EPA, the plan becomes part of the applicable implementation plan for the State (hereinafter State Implementation Plan). The requirements of the State Implementation Plan ("SIP") are federally enforceable under Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1).

25.    To achieve the NAAQS, and satisfy the requirements of Section 110 of the Act, 42 U.S.C. § 7410, the Ohio Environmental Protection Agency ("OEPA") promulgated air pollution control regulations which are codified in the Ohio Administrative Code. EPA approved OAC 3745-17-07 (Control of Visible Particulate Emissions from Stationary Sources) as part of the federally enforceable Ohio SIP. 72 Fed. Reg. 58523 (Oct. 16, 2007).

26.    A person subject to OAC 3745-17-07(A)(1) is subject to the following limitations

6

for visible particulate stack emissions: (a) except as otherwise specified in

OAC 3745-17-07(A)(1)(b), (A)(2) and (A)(3), visible particulate emissions from any stack shall not exceed twenty percent (20%) opacity, as a six-minute average; or (b) except as otherwise specified in OAC 3745-17-07(A)(2) and (A)(3), visible particulate emissions from any stack may exceed twenty percent (20%) opacity, as a six minute average, for not more than six consecutive minutes in any sixty minutes, but shall not exceed sixty percent (60%) opacity, as a six minute average, at any time.

## C. Title V of the Clean Air Act

27. Title V of the Act, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for certain sources of air pollution, including major sources. 42 U.S.C. § 7661a(a). Pursuant to Section 502 of the Act, 42 U.S.C. § 7661a(b), the EPA has promulgated regulations implementing the requirements of Title V and establishing the minimum elements of an operating permit program to be administered by any state or local air pollution control agency. 57 Fed. Reg. 32250 (July 21, 1992). These regulations are codified at 40 C.F.R. Part 70.

28. "Major source" is defined in Section 501 of the Act, 42 U.S.C. § 7661(2), and at 40 C.F.R. § 70.2, *inter alia*, as any source that directly emits or has the potential to emit 10 tons or more per year of any regulated air pollutant. PM is a listed regulated air pollutant in 40 C.F.R. § 70.2. (A regulated air pollutant is any pollutant subject to a standard promulgated under Section 122, 42 U.S.C. § 7422, or other requirements under Section 112 of the Act, 42 U.S.C. § 7412.)

29. Section 502(d) of the Act, 42 U.S.C. § 7661a(d), requires each state to submit to EPA for approval a permit program meeting the requirements of Title V.

7

30. Effective October 1, 1995, EPA granted final approval to the Ohio Title V operating permit program. 60 Fed. Reg. 42045 (Aug. 15, 1995). Ohio law governing the State's Title V operating permit program is codified at Ohio Revised Code ("ORC") 3704.036 (Title V permit program), with implementing regulations at OAC 3745-77.

31. Pursuant to OAC 3745-77-07(A)(1), a Title V permit shall include emission limitations and standards, including operational requirements and limitations, to assure that the source is in compliance with requirements applicable at the time of issuance.

32. Section 502(a) of the Act, 42 U.S.C. § 7661a(a), makes it unlawful after the effective date to operate an affected source without a permit or violate any requirement of a Title V permit. 40 C.F.R. § 70.1(b).

## D. Enforcement Authority under Clean Air Act

33. Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), provides:

Whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated or is in violation of any requirement or prohibition of any applicable implementation plan or permit, the Administrator shall notify the person and the State in which the plan applies of such finding. At any time after the expiration of 30 days following the date on which such notice of violation is issued, the Administrator may . . .

\*          \*          \*

(C) bring a civil action in accordance with subsection (b) of this section.

34. Section 113(a)(3) of the Act, 42 U.S.C. § 7413(a)(3), provides that "[e]xcept for a

8

requirement or prohibition enforceable under the preceding provision of this subsection, whenever, on the basis of any information available to the Administrator, the Administrator finds that any person has violated, or is in violation of, any other requirement or prohibition of this subchapter . . . the Administrator may . . . bring a civil action in accordance with subsection (b) of this Section . . . ."

35. Section 113(b)(1)-(2) of the Act, 42 U.S.C. § 7413(b)(1)-(2), authorizes the Administrator of EPA, acting through the Attorney General, to initiate a judicial enforcement action for a permanent or temporary injunction, and/or for a civil penalty against any person who has violated, or is in violation of, any requirement or prohibition of an applicable implementation plan or permit. A penalty can be assessed for not more than $25,000 per day for each violation.

36. Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, EPA may seek civil penalties of not more than $27,500 per day for each such violation occurring before March 15, 2004, of not more than $32,500 per day for each such violation occurring between March 15, 2004 and January 12, 2009, and of not more than $37,500 per day for each such violation occurring after January 12, 2009. 40 C.F.R. Part 19; 73 Fed. Reg. 75340 (Dec. 11, 2008); 74 Fed. Reg. 626 (Jan. 7, 2009).

## DEFINITIONS

37. Unless otherwise expressly provided herein, each term used in this Complaint that is defined in the CAA, or in the regulations promulgated pursuant to the CAA, will have the same meaning as assigned to it by the CAA and regulations. Whenever the terms set forth below are used in this Complaint, the following definitions shall apply:

9

A. "Appliance" shall mean any device which contains and uses refrigerant and which is used for household, commercial or industrial purposes, including any air conditioner, refrigerator, chiller or freezer.

B. "Boiler" shall mean an enclosed device using controlled flame combustion and having the primary purpose of recovering thermal energy in the form of steam or hot water.

C. "COMS" or "Continuous Opacity Monitoring System" shall mean equipment that continuously measures and records visible emissions, in units of percent opacity.

D. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

E. "Facility" shall mean a discrete parcel of real property, or such a parcel improved by Defendant's buildings, factory, plant, premises, or other improvements, at which Defendant operates a business containing at least one Industrial Process Refrigeration Appliance.

F. "Industrial Process Refrigeration Appliance" or "IPR Appliance" shall mean any Appliance that is directly linked to the manufacturing process and contains more than fifty (50) pounds of a Refrigerant.

G. "Non-Ozone Depleting Refrigerant" or "Non-ODS Refrigerant" shall mean any refrigerant which is not regulated under Subchapter VI of the CAA, 42 U.S.C. §§ 7671-7671q, or the regulations at 40 C.F.R. Part 82, Subpart F, as a class I or class II known or suspected ozone-depleting substance ("ODS"), and which is approved as a substitute by EPA under 40 C.F.R. Part 82, Subpart G, where such regulatory classification is determined as of the date an ODS system is converted to use of a "Non-Ozone Depleting Refrigerant."

10

H.    "Non-ODS System" shall mean any cooling system that contains only a Non-ODS Refrigerant or contains no ODS Refrigerant.

I.    "ODS System" shall mean any cooling system which uses ODS Refrigerant other than a Non-ODS System as defined in this Complaint.

J.    "Opacity" shall mean the degree to which emissions reduce the transmission of light and obscure the view of the background.

K.    "Refrigerant" shall mean any substance consisting in part or whole of a class I or class II ozone-depleting substance that is used for heat transfer purposes or provides a cooling effect.

L.    "Retire," "Retirement," "Retired," or "Retirements" shall mean the permanent removal of an Appliance from service, together with the proper removal of all Refrigerant from the Appliance.

M.    "Retrofit," "Retrofits," or "Retrofitted" shall mean a designed change (i.e., conversion) of an Appliance from an ODS System to a Non-ODS System.

N.    "State" shall mean the State of Pennsylvania or Ohio, and all of their departments and agencies.

O.    "Title V permit" shall mean a permit required by or issued pursuant to the requirements of 42 U.S.C. § 7661-7661f. For purposes of this Complaint, Title V permit refers to the Renewable Operating Permit (Facility ID: 08-57-19-0001) issued to Appleton, effective November 14, 2001.

P.    "United States" shall mean the United States of America and all of its departments and agencies.

## GENERAL ALLEGATIONS

38.    At all times relevant to this action, Appleton has been the owner or operator of the

11

West Carrollton and Roaring Springs Facilities.

39.    At all times relevant to this action, Appleton owns and operates IPR Appliances at its West Carrollton and Roaring Springs Facilities. Each IPR Appliance is an "Appliance" within the meaning of 42 U.S.C. § 7671(1) and 40 C.F.R. § 82.152.

40.    At all times relevant to this action, Appleton used class II substances (Refrigerant) in its IPR Appliances at its West Carrollton and Roaring Springs Facilities.

41.    At all times relevant to this action, the full charge of Refrigerant required for each of the affected IPR Appliances has been more than 50 pounds.

42.    At all times relevant to this action, Appleton owned and operated an IPR Appliance designated "M2887" at the West Carrollton Facility and an IPR Appliance designated "110B" at the Roaring Springs Facility.

43.    At all times relevant to this action, Appleton has, during the manufacturing of coated papers at its West Carrollton Facility, operated two coal-fired spreader stoker boilers, B002 and B003.

44.    OEPA issued to Appleton a Final Title V Chapter 3745-77 permit on November 14, 2001 (Facility ID: 08-57-19-0001). All conditions of Appleton's Title V permit are federally enforceable unless otherwise noted in the permit. Title V permit, Facility ID: 08-57-19-0001, Part A (General Terms and Conditions), Section 12. At all times relevant to this action, Appleton has been subject to the Title V permit.

45.    EPA conducted an investigation of the West Carrollton Facility to determine compliance with the federally enforceable Ohio SIP. The inspection was conducted on October 10, 2006.

12

46.      EPA issued an information request pursuant to Section 114(a) of the Act, 42

U.S.C. § 7414(a), requesting information about emissions and refrigerant leaks at the West

Carrollton Facility on December 1, 2006.  Appleton provided a response on January 19, 2007.

47.      Pursuant  to Section 113(a)(1) of the Act, 42 U.S.C. § 7413(a)(1), EPA issued a

written Notice of Violation ("NOV")/Finding of Violation ("FOV") to Appleton on or about

August 3, 2007.  The NOV/FOV cited violations of Section 608 of the Act, 42 U.S.C. § 7671g,

and its implementing regulation at 40 C.F.R. Part 82, Subpart F (Protection of Stratospheric

Ozone: Recycling and Emissions Reduction).

48.      On or about October 9, 2008, by letter, the Department of Justice ("DOJ")

provided Appleton information regarding opacity exceedances at Appleton's West Carrollton

Facility.

49.      On or about November 5, 2008, Appleton provided voluntarily to EPA and DOJ

information regarding potential violations of 40 C.F.R. Part 82, Subpart F, at its Roaring Springs

Facility.

## FIRST CLAIM FOR RELIEF
### Failure to Repair Leaking IPRAs

50.      Paragraphs 1 through 49 are realleged and incorporated herein by reference.

51.      On or about August 26, 2003, the annualized leak rates of class II substances

from M2887 at the West Carrollton Facility exceeded 35% and Appleton failed within 30 days to

repair the leak, without otherwise developing a one-year plan for retrofit or retirement of the

leak, as required by Section 608 of the CAA, 42 U.S.C. § 7671g and 40 C.F.R. § 82.156(i)(2) and

(6).

52.      On or about November 9, 2005, the annualized leak rates of class II substances

13

from 110B at the Roaring Springs Facility exceeded 35% and Appleton failed within 30 days to repair the leak, without otherwise developing a one-year plan for retrofit or retirement of the leak, as required by Section 608 of the CAA, 42 U.S.C. § 7671g and 40 C.F.R. § 82.156(i)(2) and (6).

53.     Each failure to meet the requirements of Section 608 of the Act, 42 U.S.C. § 7671g, and the implementing regulation at 40 C.F.R. § 82.156(i)(2), as specified in Paragraphs 51 and 52, above, constitutes a separate violation of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Appleton is liable for civil penalties of not more than $27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009 (74 Fed. Reg. 626 (Jan. 7, 2009) ("Civil Monetary Penalty Inflation Adjustment Rule").

54.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), permanent injunctive relief should be entered requiring, among other things, that Defendant retrofit or retire each leaking IPR Appliance specified in Paragraphs 51 and 52.

## SECOND CLAIM FOR RELIEF
### Failure to Conduct Follow-up Verification Leak Test for IPR Appliances

55.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

56.     On or about September 2003, Appleton failed to perform follow-up verification leak tests at M2887 at the West Carrollton Facility as required by 40 C.F.R. § 82.156(i)(3).

57.     On or about December 2005, Appleton failed to perform follow-up verification leak tests at 110B at the Roaring Springs Facility as required by 40 C.F.R. § 82.156(i)(3).

58.     Each failure to meet the requirements of Section 608 of the Act, 42 U.S.C. § 7671g, and the implementing regulation at 40 C.F.R. § 82.156(i)(3), as identified in Paragraphs

14

56 and 57, above, constitutes a separate violation of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Appleton is liable for civil penalties of not more than $27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009 (74 Fed. Reg. 626 (Jan. 7, 2009) ("Civil Monetary Penalty Inflation Adjustment Rule").

59.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), permanent injunctive relief should be entered requiring, among other things, that Appleton attain compliance with 40 C.F.R. § 82.156(i)(3) for each IPR Appliance specified in Paragraphs 56 and 57.

## THIRD CLAIM FOR RELIEF
### Failure to Notify EPA

60.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

61.     On or about September 2003, Appleton failed to notify EPA that M2287 at the West Carrollton Facility failed to pass a follow-up verification test as required by 40 C.F.R. § 82.156(i)(3)(iii).

62.     On or about December 2005, Appleton failed to notify EPA that 110B at the Roaring Springs Facility failed to pass a follow-up verification test as required by 40 C.F.R. § 82.156(i)(3)(iii).

63.     Each failure to meet the requirements of Section 608 of the Act, 42 U.S.C. § 7671g, and the implementing regulation at 40 C.F.R. § 82.156(i)(3)(iii), as identified in Paragraphs 61 and 62, above, constitutes a separate violation of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Appleton is liable for civil penalties of not more than $27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, $32,500 per day for

15

each violation occurring after March 15, 2004 through January 12, 2009, and \$37,500 per day for each violation occurring after January 12, 2009 (74 Fed. Reg. 626 (Jan. 7, 2009) ("Civil Monetary Penalty Inflation Adjustment Rule").

64.   Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), permanent injunctive relief should be entered requiring, among other things, that Appleton attain compliance with 40 C.F.R. § 82.156(i)(3)(iii) for each IPR Appliance specified in Paragraphs 61 and 62.

## FOURTH CLAIM FOR RELIEF
### Failure to Develop Retrofit or Retirement Plan

65.   Paragraphs 1 through 49 are realleged and incorporated herein by reference.

66.   Defendant failed to develop a written, one-year retrofit or retirement plan for M2887 at the West Carrollton Facility as required by 40 C.F.R. § 82.156(i)(6).

67.   Defendant failed to develop a written, one-year retrofit or retirement plan for 110B at the Roaring Springs Facility as required by 40 C.F.R. § 82.156(i)(6).

68.   Each failure to meet the requirements of Section 608 of the Act, 42 U.S.C. § 7671g, and the implementing regulation at 40 C.F.R. § 82.156(i)(6), as identified in Paragraphs 66 and 67, above, constitutes a separate violation of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Appleton is liable for civil penalties of not more than \$27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, \$32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and \$37,500 per day for each violation occurring after January 12, 2009 (74 Fed. Reg. 626 (Jan. 7, 2009) ("Civil Monetary Penalty Inflation Adjustment Rule").

69.   Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), permanent injunctive relief should be entered requiring, among other things, that Appleton develop a retrofit or

16

retirement plan, as required by 40 C.F.R. § 82.156(i)(6), for each IPR Appliance specified in Paragraphs 66 and 67.

## FIFTH CLAIM FOR RELIEF
### Failure to Retrofit or Retire Appliances within One Year

70.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

71.     Appleton failed to retrofit or retire M2778 at the West Carrollton Facility, or otherwise comply with the requirements of 40 C.F.R. § 82.156(i)(3)(ii), within one year after following discovery of and failure to repair the leak, or after a follow-up verification test indicated that repairs to the IPR Appliance were not successfully completed, or otherwise within the time required by 40 C.F.R. § 82.156(i)(3)(ii).

72.     Each failure to meet the requirements of Section 608 of the Act, 42 U.S.C. § 7671g, and the implementing regulation at 40 C.F.R. § 82.156(i)(3)(ii), as identified in Paragraph 71, above, constitutes a separate violation of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Appleton is liable for civil penalties of not more than $27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009 (74 Fed. Reg. 626 (Jan. 7, 2009) ("Civil Monetary Penalty Inflation Adjustment Rule").

73.     Pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), permanent injunctive relief should be entered requiring, among other things, that Appleton retrofit or retire M2778 at the West Carrollton Facility.

17

## SIXTH CLAIM FOR RELIEF
### Particulate Matter Emissions in Violation of the Ohio SIP and Title V Permit

74.     Paragraphs 1 through 49 are realleged and incorporated herein by reference.

75.     At all times relevant to this action, Appleton's West Carrollton Facility is a "major source" within the meaning of Section 501(2) of the Act, 42 U.S.C. § 7611(2), and the implementing regulations at 40 C.F.R. § 70.2.

76.     The Ohio SIP states that a person subject to OAC 3745-17-07(A)(1) is subject to the following limitations for visible particulate stack emissions: (a) except as otherwise specified in OAC 3745-17-07(A)(1)(b), (A)(2) and (A)(3), visible particulate emissions from any stack shall not exceed twenty percent (20%) opacity, as a six-minute average; or (b) except as otherwise specified in OAC 3745-17-07(A)(2) and (A)(3), visible particulate emissions from any stack may exceed twenty percent (20%) opacity, as a six minute average, for not more than six consecutive minutes in any sixty minutes, but shall not exceed sixty percent (60%) opacity, as a six minute average, at any time.

77.     Appleton's Title V permit prohibits at the West Carrollton Facility the discharge into the outer air of visible emissions from Boilers B002 and B003 that exceed a 6-minute average of 20% opacity, except for one 6-minute period in any one hour when up to 60% opacity is permissible, based on the continuous opacity monitoring system. Title V permit (Facility ID: 08-57-19-0001), Part III (Terms and Conditions for Emissions Units), at pages 14 and 19.

78.     Appleton is required to report any deviations that exceed the emission limitations specified in the Title V permit including exceedances in the opacity standard. Title V permit (Facility ID: 08-57-19-0001), Part III (Terms and Conditions for Emissions Units), Section A.IV (Reporting Requirements) at pages 15 and 20.

18

79. From June 2004 through December 2009, Appleton submitted reports identifying exceedances of the opacity limitation of 20% for B002 and B003 at the West Carrollton Facility.

80. From June 2004 through December 2009, Appleton failed to meet the conditions of its Title V permit (Facility ID: 08-57-19-0001), Part III (Terms and Conditions for Emissions Units), at pages 14 and 19, and the Ohio SIP, by causing or permitting the discharge from Boilers B002 and B003 at the West Carrollton Facility into the outer air of visible emissions that exceed a 6-minute average of 20% opacity.

81. A failure to meet a Title V permit condition constitutes an unlawful act under Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

82. Each failure to meet a Title V permit condition as required by Section 502(a) of the Act, 42 U.S.C. § 7661a(a), as identified in Paragraph 80, above, constitutes a separate violation of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Appleton is liable for civil penalties of not more than $27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009 (74 Fed. Reg. 626 (Jan. 7, 2009) ("Civil Monetary Penalty Inflation Adjustment Rule").

### SEVENTH CLAIM FOR RELIEF
### Failure to Continually Monitor Opacity

83. Paragraphs 1 through 49 are realleged and incorporated herein by reference.

84. Appleton's Title V permit requires that Appleton operate and maintain existing equipment to continuously monitor and record the opacity of the particulate emissions from Boilers B002 and B003. Such continuous monitoring and recording of equipment shall comply with the requirements specified in 40 C.F.R. § 60.13. Title V permit (Facility ID: 08-57-19-

19

0001), Part III (Terms and Conditions for Emissions Units), Section III.1 (Monitoring and/or Recordkeeping Requirements) at pages 14 and 19.

85.    From June 2004 through December 2009, Appleton violated its Title V permit (Facility ID: 08-57-19-0001), Part III (Terms and Conditions for Emissions Units), at pages 14 and 19, by failing to continuously monitor and record the opacity of the particulate emissions from Boilers B002 and B003 at the West Carrollton Facility.

86.    A failure to meet a Title V permit condition constitutes an unlawful act under Section 502(a) of the Act, 42 U.S.C. § 7661a(a).

87.    Each failure to meet a Title V permit condition as required by Section 502(a) of the Act, 42 U.S.C. § 7661a(a), as identified in Paragraph 85, above, constitutes a separate violation of Section 113(b) of the Act, 42 U.S.C. § 7413(b), and Appleton is liable for civil penalties of not more than $27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for each violation occurring after January 12, 2009 (74 Fed. Reg. 626 (Jan. 7, 2009) ("Civil Monetary Penalty Inflation Adjustment Rule").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, the United States of America, respectfully requests that this Court:

1. Permanently enjoin Appleton from operating the West Carrollton and Roaring Springs Facilities except in accordance with the Clean Air Act, 42 U.S.C. §§ 7401-7671q, 40 C.F.R. Part 82, Subpart F, and from operating the West Carrollton Facility except in accordance with the Title V permit (Facility ID: 08-57-19-0001) and OAC 3745-17-07 of the Ohio SIP.

2. Assess civil penalties against the Defendant of not more than $27,500 per day for each violation occurring after January 30, 1997 through March 15, 2004, $32,500 per day for each violation occurring after March 15, 2004 through January 12, 2009, and $37,500 per day for

20

each violation occurring after January 12, 2009.

    3. Grant the United States injunctive relief as requested in this Complaint.

    4. Award the United States its costs and expenses incurred in this action.

    5. Grant the United States such other and further relief as this Court deems appropriate.

Respectfully submitted,

Dated:    9/3/10

W. BENJAMIN FISHEROW, Deputy Chief
Environmental Enforcement Section
Environment and Natural Resources Division

Dated:    9/8/10

CHRISTINE J. McCULLOCH
Special Appointment Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
Post Office Box 7611
Washington, D.C. 20044
(202) 514-3637
christine.mcculloch@usdoj.gov

21

Complaint for Injunctive Relief/Civil Penalties
Appleton Papers Inc.
Eastern District of Wisconsin

Dated September 21, 2010

JAMES L. SANTELLE
United States Attorney
SUSAN M. KNEPEL
Civil Division Chief
State Bar #1016482
530 Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202
(414) 297-1723
Fax No. (414) 297-4394
susan.knepel@usdoj.gov

OF COUNSEL:

Kathleen Kelly Schnieders
Associate Regional Counsel
U.S. Environmental Protection Agency
Region 5
77 West Jackson Street
Chicago, Illinois 60604

22